IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| MUNICIPALITY OF MAYAGÜEZ<br><br>Plaintiff,<br><br>v.<br><br>CORPORACIÓN PARA EL DESARROLLO DEL OESTE, INC., et al.,<br><br>Defendants. | CIVIL NO. 06-1467 (JAG/MEL) |

**REPORT AND RECOMMENDATION**

**I.   PROCEDURAL BACKGROUND**

On February 10th , 2006, the Municipality of Mayagüez ("Municipality") filed a Complaint against: (1) Corporación Para el Desarrollo del Oeste, Inc. ("CPDO"); (2) Mr. Manuel E. Reyes-Merced; (3) Ms. Nereida Falto; (4) Eng. Eugenio García-Molina; (5) Ms. Ruth Yolanda Vélez-Rivera; (6) Atty. Evelyn Janet García-López; (7) GA Investment Company, Inc., (8) Yolanda Vélez Consultores, Inc. a/k/a Yolanda Vélez de García Consultores, Inc.; (9) Ing. E García Molina & Asociados; (10) Centro Equipos, Inc.; (11) NAPA Auto; (12) Mr. Carmelo Maldonado; (13) Marina Comercial Plaza Associates S en C; and (14) unknown co-defendants John Doe, Jane Doe, Richard Roe and A, B, C, Insurance Company (collectively, "Defendants"). Docket No. 3. Plaintiff premises federal subject matter jurisdiction on Article III of the Constitution of the United States, 28 U.S.C. § 1331, 24 C.F.R. § 570.501 (b),[1] 24 C.F.R. § 570.910,[2] Smith v. Kansas City Title & Trust Co., 255

---

[1] Part 570 of title 24 of the Code of Federal Regulations governs the activities of the Community Development Block Grant ("CDBG") program administered by the U.S. Department of Housing and Urban Development ("HUD"). In particular, section 570.501 provides that:
   (a) One or more public agencies, including existing local public agencies, may be designated by the chief executive officer of the recipient to undertake activities assisted by this part. A public agency so designated shall be subject to the same requirements as are applicable to subrecipients.
   (b) The recipient is responsible for ensuring that CDBG funds are used in accordance with all program requirements. The use of designated public agencies, subrecipients, or contractors does not relieve the

Mun. of Mayagüez v. Corp. Para el Desarrollo del Oeste, et al.
Civil No. 06-1467 (JAG/MEL)
Report and Recommendation
Page No. 2

U.S. 180 (1921), Municipality of San Juan v. Corporación para el Fomento Económico de la Ciudad Capital, 415 F.3d 145 (1st Cir. 2005) (hereinafter "COFECC"); Penobscot Nation v. Georgia-Pacific Corporation, 254 F.3d 317 (1st Cir. 2001), Price v. Pierce, 823 F.2d 1114, 1119 (7th Cir. 1987) and Almond v. Capital Props., Inc., 212 F.3d 20 (1st Cir. 2000). Pendent supplemental jurisdiction under the laws of the Commonwealth of Puerto Rico are premised on the same alleged actions, to wit: the Autonomous Municipalities Act, 21 L.P.R.A. § 4001 et seq. ("AMA"), and the Civil Code of Puerto Rico, 31 L.P.R.A. §§ 4, 2543, 2559, 2560, 2565, 2574, 2575, 3372, 3373, 3375, 3491, 3492 and 3496.

On October 16, 2006, CPDO filed a "Motion to Dismiss for Lack of Federal Jurisdiction" ("Motion to Dismiss") alleging that the only central issue raised in the Complaint involves the interpretation of AMA, namely, whether CPDO, as a non-profit corporation, may be the sub-recipient of certain federal funds that HUD provides to the Municipality. Docket No. 15. CPDO claims that this issue does not pose a significant federal question and that none of the cases cited by the Municipality confer subject matter jurisdiction to this Court. Id., ¶¶ 8, 10-11.

---

recipient of this responsibility. The recipient is also responsible for determining the adequacy of performance under subrecipient agreements and procurement contracts, and for taking appropriate action when performance problems arise, such as the actions described in § 570.910. . . .
See 24 C.F.R. § 570.501.

[2] This section "expressly provides an administrative enforcement scheme to address noncompliance for all community development programs, including CDBG-funded programs". Santiago ex rel. Muñiz v. Hernández, 53 F. Supp. 2d 264, 273 (E.D.N.Y. 1999). It authorizes the Secretary of HUD to take one or several corrective and remedial actions designed to prevent or mitigate the adverse effects or consequences of a deficient performance by a recipient of CDBG funds. The Secretary may, among others: (1) issue a letter of warning advising the recipient of the deficiency and putting the recipient on notice that additional action will be taken if the deficiency is not corrected or is repeated; (2) recommend, or request the recipient to submit, proposals for corrective actions, including the correction or removal of the causes of the deficiency; (3) advise the recipient to suspend disbursement of funds for the deficient activity; (4) advise the recipient to reimburse its program account or letter of credit in any amounts improperly expended and reprogram the use of the funds in accordance with applicable requirements; and (5) change the method of payment to the recipient from a letter of credit basis to a reimbursement basis. See 24 C.F.R. § 570.910.

On October 30, 2006, the Municipality filed an "Opposition to Motion to Dismiss" ("Opposition") alleging that subject matter jurisdiction is present in this case insofar the Complaint specifically alleges that CPDO made illegal use of the federal funds granted to the Municipality by HUD and that CPDO failed to abide to and comply with HUD's federal regulatory requirements. Docket No. 20. Furthermore, the Opposition also states that the cases cited by the Municipality in the Complaint, specifically COFECC, clearly hold that federal jurisdiction is proper in this case. Id.

Pursuant to the Referral Order issued by the Court on April 2, 2007 (Docket No. 29), the Motion to Dismiss (Docket No. 15) was referred to the undersigned Magistrate Judge for a Report and Recommendation.

## II.   FACTUAL ALLEGATIONS

According to the Complaint, the Municipality received CDBG and Urban Development Action Grants (UDAG) federal funds from HUD under 42 U.S.C. §§ 5303 and 5318. Docket No. 3, ¶¶ 18, 22. Said funds were destined for the development and construction of housing projects, as long as those activities were developed through a private non-profit corporation. The Municipality alleges that CPDO had been operating as a Local Development Corporation (LDC) since 1978 and, as such, was a viable sub-recipient of those funds pursuant to 24 C.F.R. §570.500 (c). Docket No. 3, ¶¶ 19, 23.

From March, 1980, through September 1984, the Municipality purchased several parcels of land with the funds it received from the HUD. The Municipality then ceded these parcels to CPDO to be devoted to the economic and social development of the Municipality through housing projects for low income residents of the Municipality, consistent with the purposes contemplated by the

Housing Community Development Act ("HCDA"), 42 U.S.C. §§ 5301-5321. Docket No. 3, ¶¶ 25-28.

In 1993 and 1997, the Office of the Comptroller of Puerto Rico and the U.S. Inspector General, respectively, audited the transactions undertaken by CPDO involving the lands that the Municipality had purchased with the federal HUD funds and entrusted to CPDO. Docket No. 3, ¶¶ 29, 48. Said audits allegedly revealed several irregularities including, among others: (1) that CPDO had not become a special corporation as required by 21 L.P.R.A. § 4815;[3] (2) that CPDO and the remaining co-defendants had engaged in several improper and/or illegal transactions with said lands; (3) that CPDO made inadequate and/or illegal use of the federal HUD funds that the Municipality had entrusted to it inasmuch the funds were not used for the purposes authorized by 24 C.F.R. § 570.309; (4) CPDO failed to keep an adequate accounting and auditing system to verify the proper use of those funds as required by 24 C.F.R. §§ 84.21 and 84.52; and (5) CPDO did not comply with the bid and competition requirements provided by 24 C.F.R. § 84.44. Docket No. 3, ¶¶ 30-42, 48. The Municipality contends that CPDO's failure to comply with its fiduciary duty in guarding the federal HUD funds and Municipal properties purchased with said funds resulted in HUD's decision

---

[3] This section of AMA provides, in relevant part, that:
Any nonprofit corporations created with the purpose of promoting the development of some aspect of a municipality in existence at the time this act becomes effective, and that have received or are receiving real or personal property, funds or annual donations, recurrent or not, from a municipality, shall avail itself to the provision of this subtitle to become special corporations by amending the certificate of incorporation to restructure its configuration under the norms established in this subtitle and registering it with the Secretary of State after the amendment has been approved by the legislature. If the Secretary of State finds that it meets the provisions of subtitle, he/she shall register it and remit certified copies to the mayor and the assembly. This conversion shall be initiated within a term of one hundred and twenty (120) days from the effectiveness date of this act.
    As of the date of enactment of this act, no municipality shall sponsor or patronize any nonprofit corporation to promote the development of any municipal public purpose, unless said corporation is constituted, organized, validated and operated according to the provisions of this subtitle . . . .
21 L.P.R.A. § 4815.

Mun. of Mayagüez v. Corp. Para el Desarrollo del Oeste, et al.
Civil No. 06-1467 (JAG/MEL)
Report and Recommendation
Page No. 5

to bar the Municipality as a recipient of federal funds pursuant to 42 U.S.C. § 5311 and demands full reimbursement of the funds allegedly misused by CPDO. Id., ¶ 59.

Through the Complaint, the Municipality seeks: (1) the termination, cancellation and/or rescission of the contract executed with CPDO ; (2) the termination, cancellation and/or rescission of several contracts or business transactions entered into between CPDO and the remaining co-defendants; (3) the return and/or reimbursement of the fair value of the properties entrusted to CPDO; (4) the return of property; and (5) damages.[4]

### III.   MOTION TO DISMISS STANDARD - RULE 12(b)(1)

Pursuant to Fed.R.Civ.P. Rule 12(b)(1), a defendant may move to dismiss an action for lack of subject matter jurisdiction.  As courts of limited jurisdiction, federal courts have the duty of narrowly construing jurisdictional grants.  See e.g., Alicea-Rivera v. SIMED, 12 F. Supp. 2d 243, 245 (D.P.R. 1998).  Since federal courts have limited jurisdiction, the party asserting jurisdiction has the burden of demonstrating the existence of federal jurisdiction.  See Murphy v. United States, 45 F. 3d 520, 522 (1st Cir. 1995); Díaz Serrano v. Caribbean Records Inc., 270 F. Supp. 2d 217 (D.P.R. 2003).

When deciding whether to dismiss a complaint for lack of subject matter jurisdiction, the Court "may consider whatever evidence has been submitted, such as . . . depositions and exhibits." See Aversa v. United States, 99 F. 3d 1200, 1210 (1st Cir. 1996).

---

[4] This is not the first time the parties litigate the claims raised in the Complaint. According to the Complaint, on October 6, 1995, CPDO filed an action in the Puerto Rico Court of First Instance, Mayaguez Superior Part, against the Municipality, its Mayor José Guillermo Rodríguez Rodríguez, and his wife for injunctive relief, declaratory judgment and damages. The Municipality then filed a third party complaint against some of the co-defendants in this case, namely, Eugenio García Molina, Ruth Yolanda Vélez Rivera and Atty. Evelyn Janet García López. Eight years later, on November 18, 2003, the parties reached an agreement to withdraw all the claims without prejudice. On May, 10, 2004, the state court issued a Resolution dismissing the case without prejudice. Docket No. 3, ¶¶ 44-47.

Motions brought under Rule 12(b)(1) are subject to the same standard of review as Rule 12(b)(6) motions. Negrón-Gaztambide v. Hernandez-Torres, 35 F. 3d 25, 27 (1st Cir. 1994); Torres Maysonet v. Drillex, S.E., 229 F. Supp. 2d 105, 107 (D.P.R. 2002). Under Rule 12 (b)(6), dismissal is proper "only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory." González-Morales v. Hernández-Arencibia, 221 F. 3d 45, 48 (1st Cir. 2000)(quoting Correa-Martínez v. Arrillaga-Beléndez, 903 F. 2d 49, 52 (1st Cir. 1990)). Under Rule 12(b)(1) dismissal would be proper if the facts alleged reveal a jurisdictional defect not otherwise remediable.

## IV. LEGAL ANALYSIS

CPDO requests that this case be dismissed asserting that the Complaint does not pose a significant federal question so as to confer subject matter jurisdiction to this Court to entertain this case. CPDO alleges that the main issues raised in the Complaint are whether CPDO violated the AMA by not converting from a non-profit corporation into a special corporation as required by 21 L.P.R.A. § 4815 and, if so, whether CPDO, as a non-profit corporation, may be the sub-recipient of the federal funds provided by HUD. CPDO asserts that these issues only involve the construction of state law. In the Opposition, the Municipality alleges that subject matter jurisdiction is present in this case pursuant to COFECC.

The factual scenario and many of the claims raised in COFECC are similar to the facts and claims asserted in this case. In COFECC, the municipality of San Juan and the Government Development Bank of Puerto Rico executed a deed of trust whereby the Bank was designated as trustee to administer funds that were granted to the municipality by the HUD. At some point in time, COFECC succeeded the Bank as trustee. Eventually, the municipality of San Juan terminated the

trustee agreement alleging that COFECC improperly used the federal grants provided by the HUD and that it failed to comply with the regulatory requirements governing the use of said funds, including maintaining an adequate accounting and auditing system as required by 24 C.F.R. §§ 84.21, 84.52. The municipality of San Juan sued COFECC requesting: (1) reimbursement and return of all unused funds; (2) breach of contract damages; and (3) injunctive and declaratory relief terminating the parties' relationship as well as COFECC's authority to use the federal funds provided by HUD. See COFECC, 415 F.3d 145, 146-47.[5]

CPDO correctly states that the issue that the First Circuit Court was called upon to decide in COFECC was the controlling applicability of an arbitration clause contained in the deed of trust executed by the municipality of San Juan and the Government Development Bank. Nevertheless, before deciding that issue, the First Circuit affirmed that the district court had subject matter jurisdiction in that case. In doing so, the First Circuit stated the following:

> Although not argued before us, COFECC earlier in the litigation challenged the substantive basis for jurisdiction, asserting that the Municipality's complaint did not state a federal question. After the magistrate judge initially recommended dismissal, the Municipality amended its complaint to draw a more explicit link between its allegations and the federal interest in ensuring compliance with the comprehensive framework of regulations governing recipients of federal block grant funds. The magistrate judge vacated his earlier ruling, relying on Supreme Court precedent recognizing that traditional state law causes of action may present a sufficiently important federal interest to warrant federal jurisdiction. See Smith v. Kansas City Title & Trust Co., 255 U.S. 180, 199, 65 L. Ed. 577, 41 S. Ct. 243 (1921); Templeton Bd. of Sewer Comm'rs v. Amer. Tissue Mills of Mass., Inc., 352 F.3d 33, 36 (1st Cir. 2003); Penobscot Nation v. Georgia-Pacific Corp., 254 F.3d 317,

---

[5] As in this case, in COFECC the municipality of San Juan also alleged that COFECC did not comply with the procurement requirement for the acquisition of services of private contractors provided in 24 C.F.R. § 84.44. Furthermore, the municipality also asserted that COFECC had violated the AMA by not converting from a non-profit corporation to a special corporation as required by 21 L.P.R.A. § 4815. See Municipality of San Juan v. COFECC, Civil Case No. 03-1917, Docket No. 15, ¶¶ 17-21, 23(d), 31.

Mun. of Mayagüez v. Corp. Para el Desarrollo del Oeste, et al.
Civil No. 06-1467 (JAG/MEL)
Report and Recommendation
Page No. 8

>  321 (1st Cir. 2001); Almond v. Capital Props., Inc., 212 F.3d 20, 22-24 (1st Cir. 2000).
>
>  Because the propriety of COFECC's conduct turns entirely on its adherence to the intricate and detailed set of federal regulatory requirements, and the funds at issue are federal grant monies, we agree with the magistrate judge and district court that jurisdiction is proper. The Supreme Court recently affirmed the continued viability of the Smith line of cases, albeit narrowly drawn. See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 162 L. Ed. 2d 257, 125 S. Ct. 2363, 2368 (2005) (upholding federal-question jurisdiction where a state-law claim necessarily implicates a federal issue, "actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities").

COFECC, 415 F.3d at 148, n.10 (emphasis added).

In this case, the Municipality claims that federal jurisdiction is warranted in this case because the Complaint asserts that Defendants failed to comply with HUD's federal regulatory requirements. In particular, the Municipality avers in the Complaint the following specific facts surrounding the propriety of Defendant's conduct in light of the federal statutes and regulations pertinent to the administration and disposition of HUD's funds:

1) The Municipality receives funds from HUD's CDBG program, pursuant to 42 U.S.C. § 5303. Docket No. 3, ¶ 18.

2) CPDO is a sub-recipient of funds from the CDBG program from the Municipality pursuant to 24 C.F.R. § 570.500 (c). Id., ¶ 19.

3) The Municipality also receives funds from HUD's UDAG program, pursuant to 42 U.S.C. § 5318. Id., ¶ 22.

4) CPDO operated under the concept of Local Development Corporation (LDC) and was a viable entity for the management of federal funds under the regulations issued by HUD for the CDBG program. Id., ¶¶ 23-24.

5) The Municipality purchased several parcels of land with funds from the CDBG and UDAG programs. These parcels were ceded to CPDO to be developed as housing projects for low income residents of the Municipality. Id., ¶¶ 25-28.

6) The Office of the Comptroller of Puerto Rico and the U.S. Inspector General audited the transactions undertaken by Defendants with the parcels. Id., ¶¶ 29, 38, 48. Said audits revealed several irregularities, including, among others, the following:

   a. CPDO did not keep an adequate accounting and auditing system to verify the proper use of CDBG funds as required by 24 C.F.R. §§ 84.21 and 84.52. Id., ¶ 36;

   b. The Municipality did not execute written agreements with CPDO, as required by 24 C.F.R. § 570.503 and had not properly monitored CPDO to assure that the objectives of HUD, namely, benefitting low and moderate income persons, eliminating slum and blight or alleviating an emergency situation, were being met. Id., ¶ 48 (a), (d); and

   c. CPDO granted purchase options and/or sold to several co-defendants and to ineligible persons or families part of the parcels that it was entrusted with by the Municipality, without obtaining appraisals, without complying with the bid and competition requirements provided by 24 C.F.R. § 84.44, and without showing how said transactions could advanced the above mentioned objectives set by the HUD. Id., ¶¶ 48 (b)-(n), 53.

"[T]he mere existence of a federal regulatory framework does not necessarily convey federal question jurisdiction over contractual disputes between private parties that are ancillary to the

Mun. of Mayagüez v. Corp. Para el Desarrollo del Oeste, et al.
Civil No. 06-1467 (JAG/MEL)
Report and Recommendation
Page No. 10

governmental interest." 15 James Wm. Moore et al., Moore's Federal Practice § 103.32 [c] (3d ed.). Similarly, the fact that some federal funds may be lurking in the background of the case cannot serve as an independent basis for establishing federal question jurisdiction. See Able Sales Co., Inc. v. Mead Johnson Puerto Rico, Inc., 420 F. Supp. 2d 1, 10 (D.P.R. 2006). Nevertheless, the claims in the case at bar are essentially the same as the claims raised in COFECC. Ultimately, the propriety of CPDO's conduct will depend not only upon said entity's adherence or not to Commonwealth law, but also on CPDO's compliance with HUD's regulations regarding the use of the funds that the Municipality entrusted to CPDO. Thus, the Court has jurisdiction over the allegations pled in the Complaint.

In view of the foregoing, it is recommended that the Motion to Dismiss (Docket No. 15) be DENIED.

IT IS SO RECOMMENDED.

The parties have ten (10) days to file any objections to this report and recommendation. Failure to file same within the specified time waives the right to appeal this order. Henley Drilling Co. v. McGee, 36 F.3d 143, 150-151 (1st Cir. 1994); United States v. Valencia, 792 F.2d 4 (1st Cir. 1986).

San Juan, Puerto Rico, this 27th day of June, 2007.

                                                  s/Marcos E. López
                                                  UNITED STATES MAGISTRATE JUDGE